**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DONTAY MURRAY, et al.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL CASE NO. 02-1207-MJR** |
| | ) | |
| **GUY PIERCE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court is defendants' motion for summary judgment (Doc. No. 123). In this action, plaintiffs challenge the conditions they experienced during their confinement at Lawrence Correctional Center, beginning in August, 2002. They claim that the defendants subjected them to repeated strip searches that violated their rights under the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution, portions of the Illinois Constitution, and state laws. Specifically, they claim that they were unnecessarily strip searched after each work shift under circumstances that were degrading and humiliating. Plaintiffs seek injunctive and declaratory relief, as well as compensatory and punitive damages for mental and emotional injuries (Doc. Nos. 25, 54).

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See*

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

Defendants Blumenstock and Pierce seek judgment in their favor on plaintiffs' various claims and assert qualified immunity as a defense to the claims for damages. Plaintiff Freeman argues that the motion is premature. All plaintiffs argue that material facts remain in dispute and that the defendants are not entitled to judgment in their favor and are not immune from a damage award. In late summer of 2002, defendants Pierce and Blumenstock discovered inmate thefts from the dietary department at Lawrence Correctional Center. They determined that inmates were stealing food to make "hooch," a home-made intoxicant. Inmate manufacture and possession of "hooch" is prohibited because of the negative effect intoxicants have on institutional safety and security. Shortly after the thefts were discovered, defendant Pierce ordered security staff to strip search third shift inmate dietary workers at the end of each shift. Prior to this time, inmate dietary workers were subjected to pat-down searches and were monitored with video surveillance cameras. These efforts proved ineffective in preventing food theft. Defendants Pierce and Blumenstock selected a storage room as the location for the strip searches, believing that the room offered an acceptable degree of privacy. They did not believe video cameras recorded activity inside the storage room.[1] The storage room had no windows in the walls; however, there were large windows in two doors and possibly an opening in one wall.[2] Defendants Pierce and Blumenstock arranged for security staff to take inmates to the storage room to undress and be searched but made no attempt to cover the windows or opening. They did not ask female staff members to search

---

[1] Plaintiff Bourbeau believes that some strip searches were recorded on video tape. The Court finds no competent evidence supporting this position.

[2] In his deposition, plaintiff Allen described an opening; others did not.

inmates.

The strip searches began in late August, 2002. Inmates were searched alone or in groups by one or more correctional officers. Additional officers stood outside the doors and observed the searches. The searching officers wore gloves and typically searched the front of the inmate, instructed the inmate to turn around and bend over, and then searched the inmate from behind. Although contraband items were not discovered as a result of the strip searches, the searches continued through April, 2003.

Female officers observed and performed some of the strip searches. Some officers physically touched the inmates during the search by using their hands to lift genitals or spread buttocks. Some officers joked, made wisecracks, or taunted the inmates.

Defendants Pierce and Blumenstock observed male officers conduct the strip searches on occasion. Defendant Pierce did not see female officers observe or perform strip searches. Neither Pierce nor Blumenstock saw correctional officers touch inmates during a search. Neither defendant touched inmates in an inappropriate manner during a search.

The plaintiffs questioned or protested the searches and sought relief through a grievance procedure, to no avail. Defendant Blumenstock advised plaintiffs and other inmates that defendant Pierce had ordered the searches. He warned them that any refusal to obey that order would be treated as a disciplinary infraction, which would lead to a housing reassignment and loss of their job.

Defendant Pierce reviewed and agreed with a recommendation that inmate grievances regarding the strip searches be denied after a grievance officer determined that proper procedures were being followed and that inmates were being searched for safety and security purposes.

During the relevant time period, the Illinois Administrative Code provided as follows:

> Strip searches and visual searches of anal or vaginal body cavities of committed persons shall be conducted by persons of the same sex as the committed person and in an area where the search cannot be observed by persons not conducting the search, except in cases of emergency.

20 Ill. Admin. Code § 501.220(b)(2). The Code also provided:

> Intrusive searches of anal or vaginal body cavities of committed persons may be performed by medical persons when a reasonable suspicion exists that contraband may be hidden in a body cavity.

20 Ill. Admin. Code § 501.220(b)(3).

Plaintiff Bourbeau was never searched by female officers. Some male officers used their fingers to move his genitals and spread his buttocks during some searches. Bourbeau perceived the physical contact as a sexual assault. Female officers occasionally observed the searches performed on Bourbeau. At times, he was taunted by the officers. He heard defendant Blumenstock laugh on one of these occasions. He felt threatened, demeaned, and humiliated.

Plaintiff Myrick was never searched by female officers but noticed defendant Blumenstock and female officers watch through the window on some occasions. The officers performing the search did not touch Myrick in an inappropriate manner; however, Myrick was verbally taunted by defendant Blumenstock and correctional officers. Myrick was strip searched more than 200 times. He felt embarrassed and humiliated, experienced mental stress, became anxious about the risk of sexual assaults, and developed a new attitude toward correctional officers. He attempted to obtain treatment from a psychiatrist, without success.

Plaintiff Freeman was searched by male and female officers. The searching officers did not touch him in an inappropriate manner but sometimes taunted him during the search. On occasion, a female supervisor entered the room while he was being searched. When Freeman asked defendant Blumenstock about the searches, Blumenstock threatened to send him to the segregation unit.

Plaintiff Allen was searched by male officers over a period of approximately 60 days. The searching officers did not touch him during the search. Once or twice, he noticed a female officer watch through the window. He heard officers make abusive jokes. Defendant Blumenstock was present during the searches once or twice. He told Allen that if he did not submit to the search, he would go to segregation, lose his job and state pay and have his classification downgraded to "C" grade.[3] Allen experienced feelings of humiliation and embarrassment.

In the dietary department at Lawrence Correctional Center, inmate workers do not have access to food items such as sugar, chips, cookies, seasonings, and spices. These items are kept in a secure, locked storage room. When items are needed for meal preparation, members of the dietary staff unlock the storage room, use the food items, and secure any unused portions. In addition, cell compliance checks are made each morning at Lawrence Correctional Center. During these checks, inmate personal property is inspected. In plaintiff Myrick's opinion, inmates could not make "hooch" in their cells without detection.

## Timeliness of Motion

Plaintiff Freeman suggests that defendants' motion is premature because discovery has not been performed by the plaintiffs (Doc. No. 139). Rule 56 permits summary judgment motions by defending parties at any time. Fed. R. Civ. P. 56(b). Discovery closed in April, 2005, following one extension requested by the defendants (Doc. Nos. 70, 116). The motion for summary judgment, filed on May 5, 2005, is timely.

---

[3] In his affidavit, plaintiff Allen states that defendant Blumenstock "taunted, jeered and laughed" during the searches. Because this statement conflicts with Allen's sworn deposition testimony, it is not considered. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000).

## § 1983 Claims

### I. Fourth and Fifth Amendment Claims

Defendants argue that the Fourth and Fifth Amendments offer limited privacy protection interests in prison that are outweighed by the legitimate interest in addressing the problems of prison violence and drugs. While the Fourth Amendment's proscription against unreasonable searches is limited in prison, this Amendment does apply to searches of an inmate's person. *Peckham v. Wisconsin Dep't of Corrections*, 141 F.3d 1340, 1342-43 (7th Cir. 1998). In considering whether a strip search is unreasonable, the Court considers the relevant circumstances, including the scope of the intrusion on the inmate's personal rights, the manner in which the search is conducted, the justification for the intrusion, and the place where the search is conducted. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In evaluating these factors, the Court accords wide-ranging deference to prison officials on matters of internal order and security. *Meriwether v. Faulkner*, 821 F.2d 408, 417 (7th Cir.1987). To the extent that the Due Process Clause also protects plaintiffs' interests in avoiding the intrusion of a strip search,[4] the inquiry is the same. *Id*.

The materials submitted could support findings that strip searches were performed in a semi-public location; that searches were occasionally performed by or in the presence of members of the opposite sex; that repeated searches were performed without suspicion that the individual plaintiffs stole food or made hooch; that searches continued despite the absence of any discovery of contraband; and that some searches were performed in an abusive manner. Construing the facts in

[4] *Graham v. Connor*, 490 U.S. 386, 395 (1989), precludes a substantive due process analysis when a more specific Constitutional provision applies. Here, both the Fourth Amendment and the Eighth Amendment protect plaintiffs' interests.

plaintiffs' favor, the evidence could support the finding that many strip searches were not reasonable under the circumstances and that plaintiffs' rights under the Fourth and Fifth Amendments were violated.

The defendants also argue that they were not personally involved in any Constitutional deprivation. With respect to defendant Pierce, plaintiffs point out that Pierce established the policy and gave the order that strip searches be performed repeatedly in a location that did not meet the privacy requirement of the applicable prison regulation. They believe the evidence shows that Pierce knew it was excessive to perform strip searches at the end of each work shift. They also argue that Pierce acted in collusion with subordinate officials, failed to supervise the correctional officers performing the searches, and/or failed to take corrective action after being notified that searches were being performed in an inappropriate manner.

With respect to defendant Blumenstock, plaintiffs point out that he was present on occasion when searches were performed. Sometimes, female employees were present as well. Additionally, he threatened to send inmates to segregation and laughed in response to abusive comments.

In addition to proving that their rights were violated, plaintiffs must prove that the defendants personally participated in or caused the unconstitutional actions. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981). With respect to officials acting in a supervisory role, personal involvement requires that the violation occur at the official's direction or with his knowledge and consent. *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994).

The evidence linking defendant Pierce to unconstitutional conduct is weak. Pierce did not know that plaintiffs were being searched by or in the presence of the opposite sex or that they were subjected to abusive commentary or personally offensive contact. However, plaintiffs can show that

Pierce knew they were being searched repeatedly in a semi-public location without any individualized suspicion of food theft and without any discovery of contraband. Reasonable jurors might conclude from the evidence that Pierce ordered, authorized, or condoned searches that were excessive, unjustified, and unreasonable.

Plaintiffs can demonstrate that defendant Blumenstock knew that plaintiffs were strip searched by or in the presence of the opposite sex in a location where they were seen by on-lookers, were subjected to abusive commentary, and were searched repeatedly without particularized suspicion or discovery of contraband. Reasonable jurors might conclude that Blumenstock subjected plaintiffs to strip searches that were excessive, unjustified, and unreasonable. Judgment in defendants' favor is not warranted on the Fourth or Fifth Amendment claims.

**II. Eighth Amendment Claims**

The defendants seek judgment in their favor on plaintiffs' Eighth Amendment claims, arguing that the searches were not performed for the purpose of harassment, but for the purpose of maintaining institutional security. Plaintiffs disagree.

A strip search by or in the presence of members of the opposite sex does not necessarily violate the Eighth Amendment. *Johnson v. Phelan*, 69 F.3d 144, 146-51 (7th Cir.1995). However, strip searches performed for the purpose of harassment to inflict psychological pain rather than to advance legitimate prison goals do violate the Eighth Amendment. *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

Preventing inmates from acquiring the ingredients for home-made inebriants is a legitimate penological goal. Even so, the evidence discussed above might support a finding that defendant Blumenstock condoned or approved searches that were performed for the sole purpose of harassment

to inflict psychological pain. The facts do not suggest that defendant Pierce's order was totally without penological justification or motivated by a malicious desire to harass. Because Pierce's conduct does not contravene the Eighth Amendment standard, Pierce is entitled to judgment in his favor on this claim.

**III. Qualified Immunity**

The defendants also argue that they have qualified immunity from any damage award. Plaintiffs argue that the defendants violated clearly established federal law, as well as state criminal laws and prison regulations. In order to resolve this defense, the Court first decides whether the alleged conduct violated a Constitutional right, taking the facts in the light most favorable to plaintiff. The Court then considers whether the right was clearly established in the light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As noted above, plaintiffs may be able to demonstrate Fourth and Eighth Amendment deprivations. The legal standards governing strip searches in prison were clearly established prior to August, 2002. *Bell v. Wolfish*, 441 U.S. at 559; *Peckham v. Wisconsin Dep't of Corrections*, 141 F.3d at 1342-43; *Bruscino v. Carlson*, 854 F.2d 162, 166 (7th Cir.1988). The defendants are not immune from an award of damages.

**IV. Damages**

Defendants also seek judgment in their favor on plaintiffs' claims for compensatory damages. They argue that damage claims are barred first because plaintiffs have not described any actual injury and because plaintiffs have not proven any physical injury in support of their claim of emotional injury.

Section 1983 is designed to provide compensation for injury caused by a Constitutional

deprivation. Hence, compensatory damages may not be awarded without proof of actual, compensable injury. *Memphis Community School District v. Stachura*, 477 U.S. 299, 307-8 (1986). Injuries such as personal humiliation and mental suffering are compensable. *Carey v. Piphus*, 435 U.S. 247, 264 (1978). Absent a showing of physical injury, 42 U.S.C. § 1997e(e) bars a prisoner from recovering compensatory damages for mental and emotional injury. The statute does not bar the lawsuit altogether because a Constitutional deprivation will support nominal and perhaps punitive damages. *Cassidy v. Ind. Dept. of Corrections*, 199 F.3d 374, 376-77 (7th Cir. 2000).

The record reveals no evidence that any of the plaintiffs suffered physical injury. Plaintiffs Bourbeau, Myrick, and Allen presented evidence of humiliation and mental anguish. Accordingly, any monetary relief awarded to Bourbeau, Myrick, and Allen is limited to nominal and perhaps punitive damages. On the other hand, because plaintiff Freeman did not present any evidence of compensable harm, the defendants are entitled to judgement in their favor on Freeman's § 1983 claims.

## State Law Claims

### I. Illinois Constitution

Defendants seek judgment in their favor on plaintiffs' claims that the searches violated portions of the Illinois Constitution, arguing that the searches were performed to secure the public safety. They cite to *People v. Brown*, 95 N.E.2d 888 (Ill. 1951), where the Illinois Supreme Court held that the state legislature improperly invoked the State's inherent police power to invade individual property rights by regulating the plumbing trade. They also argue that considerations supporting judgment in their favor on plaintiffs' Fourth Amendment claim apply. Because the defendants are not entitled to judgment in their favor on plaintiffs' Fourth Amendment claim and

because *Brown* does not support defendants' argument, the defendants have not shown that they are entitled to judgment in their favor on this claim for relief.

### II. Statutory Prohibition of Sexual Misconduct and Custodial Sexual Abuse

Defendants also seek judgment in their favor on perceived claims of sexual misconduct and custodial sexual abuse. The Court finds that plaintiffs are not attempting to assert tort claims under Illinois common law. Rather, these allegations appear to be offered to support their prayer for punitive damages and/or to defeat the anticipated qualified immunity defense. Accordingly, this argument is not addressed.

## Conclusion

IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. No. 123) be GRANTED in part and DENIED in part. At the close of this case, judgment should be entered in favor of both defendants on the § 1983 claims asserted by plaintiff Freeman. Judgment should also be entered in favor of defendant Pierce on the Eighth Amendment claims asserted by plaintiffs Bourbeau, Myrick, and Allen. Monetary damages on the § 1983 claims should be restricted to nominal and, if appropriate, punitive damages.

**SUBMITTED: February 24, 2006 .**

***s/Philip M. Frazier***
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**