**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RICHARD BOURBEAU, STEVE ALLEN, PERCY MYRICK, and KENYATTE FREEMAN, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 02-cv-1207-MJR ) |
| GUY PIERCE and JARET BLUMENSTOCK, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**A. Introduction and Background**

On December 4, 2002, eleven inmates in the custody of the Illinois Department of Corrections filed this action under 42 U.S.C. § 1983 (Doc. 1). Plaintiffs alleged that Defendants subjected them to strip searches from August 2002 until April 2003 at the Lawrence Correctional Center while Plaintiffs were employed in the dietary department. Plaintiffs argued that the strip searches were degrading and humiliating, thereby violating the Fourth, Fifth, and Eighth Amendments of the United States Constitution and Article I, Section 6 of the Illinois Constitution. Defendants argued that the strip searches were conducted in a reasonable manner due to legitimate prison management concerns, and were therefore not unconstitutional. Specifically, Defendants alleged that food had been stolen and that the searches were necessary to discover and stop thefts.

Prior to trial, the Court dismissed all Plaintiffs except Bourbeau, Allen, Myrick, and Freeman (See Docs. 34, 46, & 113) and dismissed all Defendants except Pierce and Blumenstock (Doc. 54). Additionally, the Court adopted the Magistrate Judge's report and recommendation that Defendants be granted summary judgment on Plaintiff Freeman's § 1983 claims and that Defendant

Pierce be granted summary judgment on the Eighth Amendment claims asserted by Plaintiffs (See Docs. 146 & 149).

Trial began on April 16, 2007.[1] At that time, Plaintiffs' surviving claims were: (1) Bourbeau, Allen, and Myrick's Fourth and Fifth Amendment claims against Blumenstock and Pierce, (2) Bourbeau, Allen, and Myrick's Eighth Amendment claims against Blumenstock, and (3) Bourbeau, Allen, Myrick, and Freeman's claims under Article I, Section 6 of the Illinois Constitution against Blumenstock and Pierce.

At the close of evidence on April 18, 2007, Defendants orally moved for judgment as a matter of law pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 50.** At that time, the Court granted the motion in part and reserved its ruling on the balance of the motion (See Doc. 189). The Court granted judgment as a matter of law as to Plaintiffs' Fifth Amendment claims on the grounds that none of the Defendants were federal officials. The Court also denied as untimely the Plaintiffs' motion to amend their complaint so as to convert their Fifth Amendment claims to Fourteenth Amendment claims.

Additionally, the Court granted judgment as a matter of law as to Article I, Section 6 of the Constitution of the State of Illinois, finding that no private right of action exists under that section. Consequently, Plaintiff Freeman was dismissed as he no longer had any viable claims remaining against the Defendants.

The jury trial culminated in an April 18, 2007 verdict in favor of the Defendants (See Doc. 191). As a result, the Court denied as moot the balance of Defendants' Rule 50 motion (Doc.

---

[1] It should be noted that the parties never requested that a transcript be prepared. However, the Court was able to access a rough transcript of the proceedings. Any quotation of statements made on the record are taken from the rough transcript.

196) and entered judgment in favor of Defendants (Doc. 197).

Plaintiffs timely moved for a new trial on April 30, 2007 (Doc. 198). The motion has been fully briefed. For the reasons described below, the Court **DENIES** Plaintiffs' motion.

## B.  Analysis

**FEDERAL RULE OF CIVIL PROCEDURE 59(a)** provides that in any action where there has been a jury trial, a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."

That language has been interpreted to mean that a district court may grant a new trial only if the jury's verdict was against the manifest weight of the evidence, or a new trial is necessary to prevent a miscarriage of justice.  *See Romero v. Cincinnati, Inc.*, **171 F.3d 1091, 1096 (7th Cir. 1999);** *Lonsdorf v. Seefeldt*, **47 F.3d 893, 897 (7th Cir. 1995);** *Sokol Crystal Products, Inc. v. DSC Communications Corp.*, **15 F.3d 1427, 1432 (7th Cir. 1994).**

> The law of this Circuit holds:
>
> A new trial may be granted only if the verdict is against the clear weight of the evidence.... **"[W]e will not set aside a jury verdict if a reasonable basis exists in the record to support that verdict...."** The evidence must be viewed in the light most favorable to the prevailing party, and issues of credibility and weight of evidence are within the purview of the jury.

*Carter v. Chicago Police Officers*, **165 F.3d 1071, 1079 (7th Cir. 1998) (emphasis added).** *Accord Cefalu v. Village of Elk Grove*, **211 F.3d 416, 424 (7th Cir. 2000).**

Plaintiffs offer nine grounds in support of their new trial motion. First, Plaintiffs argue that the Court erred in giving various jury instructions over their objections. Second, Plaintiffs argue that the Court erred in directing the jurors to continue deliberating after the jurors sent a note to the Court indicating that they were deadlocked. Third, Plaintiffs argue that the dismissal of

Plaintiff Freeman was error because Article I, Section 6 of the Illinois Constitution provides a private right of action. Fourth, Plaintiffs argue that the verdicts against Plaintiffs Bourbeau, Allen, and Myrick were against the manifest weight of the evidence. Fifth, Plaintiffs argue that they proved by a preponderance of the evidence that the Defendants violated their federal rights under the Fourth and Eighth Amendments. Sixth, Plaintiffs argue that the dismissal of Plaintiff Freeman at the Rule 50 stage denied Plaintiffs a fair trial because the dismissal tended to indicate to the jury that they should find against the remaining Plaintiffs. Seventh, Plaintiffs argue that the Court erred in denying their motion to amend the complaint to convert the Fifth Amendment claims to Fourteenth Amendment claims. Finally, Plaintiffs argue that they were prejudiced when the Defendants gave testimony in direct contradiction of the uncontroverted and stipulated facts, thereby giving the jury the impression that the stipulated facts were subject to dispute.

As to the Plaintiffs' first argument, the Court did not err in giving Defendants' jury instructions 23, 31, 32, or 33. Plaintiffs argue that each of these instructions misstates the law and has the effect of slanting evidence in favor of the Defendants. At trial, Plaintiffs did not object to Defendants' jury instruction 23, but did object to instructions 31, 32, and 33.

Where a party did not object to an instruction at trial, the Court reviews the instruction for plain error affecting substantial rights. **FED.R.CIV.P. 51(d)(2);** *see Production Specialties Group, Inc. v. Minsor Systems, Inc.***, -- F.3d --, 2008 WL 151176, \*3 (7th Cir. Jan. 17, 2008).** As Plaintiffs did not object to Defendants' instruction 23, plain error review applies. Instruction 23 states:

> Searches of an inmates (sic) body which are maliciously motivated
> with the intent to humiliate and inflict psychological pain, and are
> done without prison management justification, are unconstitutional.
> For a search of an inmate's body to be unconstitutional, the prison

> staff ordering or conducting the searches must want to humiliate and inflict psychological pain on the inmate.

**Doc. 192.** Defendant cited three cases in support of this instruction: ***Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004),** ***Johnson v. Phelen*, 69 F.3d 144, 149 (7th Cir. 1996), and *Farmer v. Brennan*, 511 U.S. 825 (1994).** In *Whitman*, which is the most recent and factually similar of the three cases cited by Defendants, the Seventh Circuit stated:

> In the context of bodily searches performed upon those incarcerated in our prison system, only those searches that are "maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification' are considered unconstitutional." In other words, the search must amount to "calculated harassment unrelated to prison needs," with the intent to humiliate and inflict psychological pain.

**368 F.3d at 934 (internal citations omitted).**

The language of Defendants' jury instruction 23 is consistent with the Seventh Circuit's statement of law in *Whitman*, and Plaintiffs provide absolutely no authority for the position that the instruction misstates the law. Consequently, the Court did not commit plain error affecting Plaintiffs' substantial rights in giving Defendants' instruction 23, and Plaintiffs were not prejudiced by the instruction.

As for Defendants' jury instructions 31, 32, and 33, Plaintiffs made timely objections on the record. Therefore, if any instruction was given in error, then a new trial is warranted if the error confused or misled the jury causing prejudice to Plaintiffs. *See* **FED.R.CIV.P. 51(d)(1)(A);** *Byrd v. Illinois Dept. of Public Health*, **423 F.3d 696, 705 (7th Cir. 2005).**

Defendants' jury instruction 31 reads:

> Plaintiff must prove by a preponderance of the evidence that defendants Blumenstock and Pierce were personally involved in the conduct that plaintiffs complain about. You may not hold defendants

>           Blumenstock and Pierce liable for what other employees did or did
>           not do.

**Doc. 192.**

Plaintiffs argue that the instruction not only slants the evidence in favor of the Defendants, but also "practically directs a verdict in favor of the defendants as it all but makes it impossible to find a supervisory official liable for actions he directs his subordinates to carry out" (Doc. 198, ¶ 12). At the jury instruction conference, Plaintiffs objected on the same grounds, arguing that the instruction might give the jury the impression that Defendants had to be physically involved, and that since Blumenstock and Pierce's subordinates were the ones who physically carried out the searches, they could not be liable.

The instruction was taken from Seventh Circuit Pattern Jury Instruction - Civil 7.02 and modifies that pattern instruction only insofar as it names the Defendants and adjusts grammar and verb tense accordingly.[2] Plaintiffs' objection appears to be that the instruction suggests to the jury that if Defendants were not physically involved in the searches, they cannot be held liable. The argument misstates the contents of the pattern instruction, which requires that for liability to attach, Defendants must have been "personally involved" in the constitutional violation. There was a great deal of evidence that Defendants were personally involved in the strip searches, in that they either ordered them, encouraged them, permitted them to continue, or monitored their progress and success. The jury was not instructed that such evidence was insufficient for a finding of liability, nor was the jury instructed that it had to find that Defendants were physically involved in the searches. Rather, the instruction was entirely consistent with the law of this Circuit, which provides

---

[2] The Circuit Council has approved the publication of the Federal Civil Jury Instructions for the Seventh Circuit, but the Circuit Council has not approved their content.

that Defendants must be personally involved in order for liability to attach.

Moreover, had the Court not given the instruction, the jury may have improperly imposed a form of vicarious liability on the Defendants based on the actions of their subordinates. ***See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability.").** Finally, Plaintiffs have cited absolutely no legal authority for their position that this instruction was given in error. Accordingly, the Court finds that it was not error to give Defendants' jury instruction 31, and Plaintiffs were not prejudiced.

Defendants' jury instruction 32 reads:

> You have heard evidence about whether the defendants' conduct complied with or violated an administrative rule or procedure. You may consider this evidence in your deliberations. But remember that the issue is whether the defendants violated the plaintiffs (sic) constitutional rights, not whether an administrative rule or procedure might have been complied with or violated.

**Doc. 192.**

Plaintiffs argue that this instruction does not accurately state the law and slants the evidence in favor of the Defendants. Plaintiffs' counsel stated the same objection during the jury instructions conference, and also argued that the instruction was unnecessary given that other general instructions sufficiently explained the law.

This instruction was taken from Seventh Circuit Pattern Jury Instruction - Civil 7.04 and does not modify the substance of the pattern instruction, but only adjusts the language to specifically refer to violations of administrative rules. The jury was presented with testimony and evidence that certain Illinois Department of Corrections administrative rules and procedures may have been violated when the searches were conducted. The instruction properly instructed the jurors that they could consider whether the alleged conduct complied with these procedures, but that

ultimately, they had to determine whether Plaintiffs' constitutional rights were violated. Consequently, the Court did not err, and instruction number 32 did not prejudice Plaintiffs.

> Defendants' jury instruction 33 reads:
>
> Standing alone, derogatory language and/or verbal harassment directed toward an inmate does not violate the constitution.

**Doc. 192.** Plaintiffs argue that the instruction fails to accurately state the law and slants the evidence in favor of the Defendants. In support of this instruction, Defendants cited ***Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).** In *Dewalt*, the Seventh Circuit stated:

> Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.

**224 F.3d at 612.** The language of Defendants' jury instruction 33 is consistent with the Seventh Circuit's statement of law in *Dewalt*, and Plaintiffs provide absolutely no authority for the position that the instruction misstates the law.

Moreover, the instruction was important in this case because there was a great deal of testimony that officers made sexual jokes during the searches. The instruction merely informs the jury that such verbal harassment *by itself* is insufficient to establish a constitutional violation. Importantly, the instruction does not prohibit the jury from considering verbal harassment in making its decision, but rather indicates that some accompanying improper conduct is required in order to create a constitutional violation. Consequently, the instruction was not given in error, and Defendants were not prejudiced.

As for Plaintiffs' second argument, the Court did not err in directing the jury to continue its deliberations after the jurors sent a note indicating that they were deadlocked. On April 18, 2007, closing arguments concluded and the jury began deliberations at 11:30 a.m. The Court

provided the jurors with lunch at 12:30 p.m. At 1:33 p.m. the Court received a note from the jury stating: "If we cannot agree what is next?" **Doc. 190-2.** The Court consulted with the parties' attorneys, noting that the jury sent out the note after having been out only two hours including time for lunch. At that point, Plaintiffs' counsel suggested giving the "deadlocked jury instruction" at Seventh Circuit Pattern Instruction 7.06 , indicating that Plaintiffs would waive any error if the Court were to give a modified *Silvern* instruction. However, Defendants objected to such an instruction and refused to waive any error.

At that point, Plaintiffs' counsel suggested an instruction encouraging the jury to continue its deliberations and stressing that the Court was not trying to coerce a verdict. The Court proposed the following instruction:

> I do not want to coerce a verdict from you or cause you to surrender your beliefs as to what the verdict should be solely to obtain a verdict. **However, you must realize there was a great expenditure of time and money by both sides, not to mention the expense of security and transportation and Court resources.** It is simply too early in your considerations to give up your efforts. Listen to your fellow jurors with an open mind. Continue deliberating until you have either one unanimous verdict based upon the law in evidence, or until you are hopelessly deadlocked.

Plaintiffs' counsel objected to the second sentence relating to the time, expense, and security involved (highlighted above). With the parties' explicit approval, the Court gave this verbal instruction to the jury without the second sentence. The jury came back with a verdict at 2:55 p.m. in favor of Defendants and against Plaintiffs.

As stated, Plaintiffs not only failed to object to the instruction, but also explicitly approved of the instruction and aided the Court in constructing it. In doing so, Plaintiffs waived any alleged error in giving the instruction.

Moreover, the instruction was not given in error because the instruction did not "pressure[] the jury to surrender [its] honest opinions for the mere purpose of returning a verdict." ***General Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 830 F.2d 716, 730 (7th Cir. 1987) (quoting *United States v. Thibodeaux*, 758 F.2d 199, 203 (7th Cir.1985) (per curiam)).** To the contrary, the instruction stated that the Court had no intention of coercing a verdict and encouraged the jury to continue deliberations with open minds. More importantly, the Court instructed the jurors that deliberations could continue until they reached a verdict or, alternatively, became hopelessly deadlocked.

Yet again, Plaintiffs have provided no citation to any legal authority supporting their position. Therefore, in light of the small amount of time the jury deliberated and the instruction the Court gave in response to the jury's note, there was no error because the Court did not coerce a verdict from the jury.

With respect to the Plaintiffs' third argument, the dismissal of Plaintiff Freeman was not error because Article I, Section 6 of the Illinois Constitution does not provide a private right of action. When trial commenced, Freeman's only viable claim against Blumenstock and Pierce was based upon Article I, Section 6. On April 17, 2007, Defendants made a Rule 50 motion for judgment as a matter of law on the grounds that Article I, Section 6 did not provide a private right of action. The Court granted the motion and dismissed Freeman, as he no longer had any viable claims remaining in the case (Doc. 189).

In *Teverbaugh ex rel. Duncan v. Moore*, the Appellate Court of Illinois held that Article I, Section 18 does not provide a private right of action and, in doing so, explained the analysis for determining whether a particular provision of the Illinois Constitution includes a private

right of action. **724 N.E.2d 225, 228-29 (Ill.App. 2000).** The court stated that the absence of language delineating remedies or language of self-execution is significant in determining whether a private right of action exists. *Id.* **at 228.** For instance, Article I, Section 17 prohibits "discrimination on the basis of race, color, creed, national ancestry, and sex in hiring and promotion practices," and explicitly provides for a private right of action: "These rights are enforceable without action of the General Assembly, but the General Assembly may establish reasonable exemptions relating to these rights and provide additional remedies for their violation." **ILL.CONST. 1970, art. I, § 17.**

Citing *Baker v. Miller*, 636 N.E.2d 551, 558 (Ill. 1994), the court noted that the presence of such language evinces an "intent to provide a private right of action in the event the legislature failed to enact laws creating private remedies . . . ." *Teverbaugh,* **724 N.E.2d at 229.** As Article I, Section 18 lacks such language, however, the court held that it does not provide a private right of action in and of itself.

Similarly, Article I, Section 6 has no such language. It states:

> The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

Because there is no self-executing language in this section of the Illinois Constitution, it includes no private right of action. Additionally, this Court is unaware of any statutory provision or case that provides remedies for violations of Article I, Section 6, and Plaintiffs have cited no legal authority whatsoever that would indicate the contrary. Therefore, the Court did not err in finding that Article I, Section 6 of the Illinois Constitution does not provide a private right of action, and Freeman was

properly dismissed for lack of any remaining claims.

The remaining grounds raised by Plaintiffs need not detain the Court long, as Plaintiffs have wholly failed to provide a single reference or citation to any legal authority that would support their positions. And as the Seventh Circuit has noted, this Court "need not try to fish a gold coin from a bucket of mud." ***United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).**

As their fourth argument, Plaintiffs contend that the jury's verdict was against the manifest weight of the evidence. To satisfy this standard, Plaintiffs must demonstrate that no rational jury could have rendered a verdict against them. ***King v. Harrington,* 447 F.3d 531, 534 (7th Cir. 2006) (citing *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 926 (7th Cir. 2004)).** The Court must view the evidence in the light most favorable to Defendants, "leaving issues of credibility and weight of evidence to the jury." ***King*, 447 F.3d at 534 (citing *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004))**.

In the present case, the evidence provided an ample basis for the jury's verdict. Stated another way, a rational jury certainly could have found in favor of Defendants Pierce and Blumenstock and against Plaintiffs Bourbeau, Allen, and Myrick. Though the Defendants did not dispute that strip searches actually occurred, there was a great deal of testimony disputing the Plaintiffs' claims about the circumstances of those searches. Plaintiffs testified that the searches occurred daily for eight months with multiple individuals present, that sexual jokes were made, and that officers physically conducted body cavity searches on Bourbeau. Additionally, Plaintiffs claimed that the searches were conducted in a room with windows, through which other inmates, officers, and female employees could view the searches.

On the other hand, Defendants presented testimony that after discovering that a variety of food items were missing from the dietary department, they instituted strip searches. Evidence was presented that though the searches regularly occurred for eight months, the searches were only conducted on a randomly selected portion of the dietary crew each day. Additionally, there was evidence that after the searches began, the number of food thefts reduced drastically. Blumenstock testified that he occasionally monitored the area in which searches were conducted, though he never viewed the actual strip searches. Accordingly, he testified that within a few days of the searches being conducted, he was informed that multiple individuals had been present during the searches, and he immediately put a stop to it. He testified that after this, each search was conducted by a single officer on a single inmate and the door to the room was closed. Blumenstock also testified that he placed translucent trash bags over the windows after inmates complained of the possibility that others might be able to view the strip searches from outside the room. There was also testimony disputing Bourbeau's claim that body cavity searches had been performed on him, and evidence that he had not complained of that particular conduct in his grievances.

Given the degree and amount of conflicting evidence, the jury was forced to make credibility determinations in order to decide which version of facts to believe. Consequently, a reasonable basis exists in the evidentiary record to support the jury's verdict. Therefore, the verdict was not contrary to the manifest weight of the evidence.

With this background, Plaintiffs' fifth argument also fails. Plaintiffs argue that they proved by a preponderance of the evidence that the Defendants violated their federal rights under the Fourth and Eighth Amendments. More specifically, Plaintiffs claim that they proved by a preponderance of the evidence (1) that Defendants did not have a bona fide prison management

justification for conducting the strip searches, (2) that Blumenstock was motivated by a malicious intent to humiliate and inflict psychological pain, and (3) that the strip searches were unreasonable.

As already noted, there was a great deal of contradicting testimony on each of these issues. Primarily, Defendants produced evidence that the searches were conducted to stop and deter food thefts, and to detect individuals who were involved in such thefts. The mere fact that the thefts were not successful in determining the identify of the thieves is not enough for the Court to find that Plaintiffs proved the absence of a genuine prison management justification. Additionally, the evidence that certain administrative rules may have been violated does not in and of itself prove by a preponderance of the evidence that Defendants were motivated by a malicious intent.

Likewise, evidence that the searches continued for eight months, even though food thefts reduced drastically, does not necessarily prove that the searches were unreasonable or motivated by a malicious intent. There was testimony regarding the safety risk that food thefts posed to the prison, particularly that inmates used sugar, fruit, and other items to produce homemade alcohol which made it far more difficult for guards to maintain order in the facility. Also, as stated above, there was conflicting evidence on the nature of the searches, their intrusiveness, and the ability of others to view them. Given the contradicting evidence produced by both sides, a reasonable jury could find that Plaintiffs did not prove their case by a preponderance of the evidence.

Next, Plaintiffs argue that the dismissal of Freeman at the Rule 50 stage denied the remaining Plaintiffs a fair trial because the dismissal tended to indicate to the jury that they should find against the remaining Plaintiffs. This claim is without merit, as the Court conferred with Plaintiffs' counsel with regard to how the jury should be instructed on Freeman's dismissal. Plaintiffs' counsel expressed concern that the jury might erroneously speculate that Freeman had

voluntary departed because the allegations had all been made up. As a result, counsel requested that the jury be instructed that the Court had ordered Freeman's dismissal, that they should not speculate as to why, but that they could consider his testimony as evidence in arriving at a verdict as to the remaining claims.

When the jury returned to the courtroom, the undersigned Judge gave the following explanation:

> You will note from the Plaintiffs' table that Plaintiff Freeman is no longer here. I have made a ruling that he is no longer a party in the case. You should not consider or concern yourselves whatsoever with that ruling. Don't engage in any guess, speculation, or conjecture as to why he is no longer a Plaintiff in this case. You may, however, consider his testimony as it effects the claims of the remaining Plaintiffs and Defendants.

This instruction was given with Plaintiffs' counsel's input and approval. Any harm that Freeman's dismissal posed to the other Plaintiffs was eliminated by the instruction. Plaintiffs do not offer any legal authority or factual information that would permit this Court to find that Freeman's dismissal in any way prejudiced the Plaintiffs. Considering all of these facts, Freeman's dismissal did not deprive the Plaintiffs of a fair trial, nor did it indicate to the jury that they should find against the remaining Plaintiffs.

Seventh, Plaintiffs argue that the Court erred in denying their motion to amend the complaint so as to convert the Fifth Amendment claims to Fourteenth Amendment claims. On April 17, 2007, Defendants made a Rule 50 motion after the close of evidence. Defendants argued that they were entitled to judgment as a matter of law on Plaintiffs' claims under the Fifth Amendment of the United States Constitution, because Defendants were not federal employees. The Court granted the motion, and Plaintiffs moved to amend their complaint to convert their Fifth Amendment

claims to Fourteenth Amendment claims. Defendants objected, and the Court denied the motion to amend as untimely and also found that any possible Fourteenth Amendment claims were subsumed by the more specific constitutional provisions in the Fourth and Eighth Amendment claims.

Plaintiffs now argue that the Court should have granted the motion to amend, because the Fourteenth Amendment claims would have been identical to the Fifth Amendment claims, and Defendants would not have been prejudiced. Additionally, Plaintiffs argue that by not moving the Court to dismiss the Fifth Amendment claims at the pre-trial stage, Defendants unjustly denied the Plaintiffs, who were at the time proceeding pro se, the opportunity to amend their complaint.

Plaintiffs' objections are unconvincing. First, the motion to amend was not made until the Rule 50 stage after the close of evidence. At such a late stage, it is fully within the trial court's discretion to allow or refuse to allow amendment of the complaint so as to add new claims or legal theories.

Also, the fact that Defendants did not move to dismiss the Fifth Amendment claims earlier does not save Plaintiffs from their responsibility to properly plead their own claims. It is well-established that the plaintiff is the master of his complaint. The fact that Plaintiffs failed to amend at an earlier date is not a defect that was caused by the Defendants. The admonition about removing the speck from another person's eye while ignoring the plank in one's own comes to mind.

Moreover, where a particular constitutional amendment provides explicit protection from certain conduct, those provisions subsume the more general protection of due process. *See Graham v. Connor*, **490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due**

**process,' must be the guide for analyzing these claims.").** Such is the case here, where Plaintiffs' claims were properly analyzed under the Fourth and Eighth Amendments, rather than the more generic protections of the Fourteenth Amendment's Due Process Clause. As a result, Plaintiffs were not prejudiced by the Court's denial of their motion to amend their complaint.

Finally, Plaintiffs argue that they were prejudiced when the Defendants gave testimony in direct contradiction of the uncontroverted and stipulated facts, thereby confusing the jury and creating the impression that the stipulated facts were subject to dispute. Plaintiffs' argument relates to two paragraphs of the stipulated facts agreed to by the parties in their Final Pre-Trial Order. At section III, paragraph 5, the parties stipulated that "The strip searches commenced on or about August 27, 2002 and continued through on or about April, 2003." **Doc. 168, p. 2.** At paragraph six, the parties stipulated that "Persons responsible for the food thefts were never discovered." *Id.*

As Plaintiffs do object to particular statements in the record, the Court is uncertain as to which statements they take issue with. And, as noted above, this Court "need not try to fish a gold coin from a bucket of mud." *Garst***, 328 F.3d at 378.** Nonetheless, the Court notes that the following testimony appears to be on point, and it is not clear that any of the testimony offered by Defendants directly contradicted the uncontroverted facts.

On April 17, 2007, Plaintiffs' counsel called Defendant Pierce to the stand and asked him about his knowledge of the strip searches. When asked specifically about paragraph five of the uncontroverted facts, Pierce testified that while he was not aware of daily strip searches taking place for eight months, strip searches did periodically take place between August 27, 2002 and April 2003. Pierce also stated that while he authorized more frequent strip searches during this period, strip

searches could be conducted without his approval at any time given certain circumstances.

On April 17, 2007, Plaintiffs also called Defendant Blumenstock to the stand and asked him about paragraph five. He stated that in approximately January 2003, routine strip searches stopped, though more strip searches may have been conducted through April. Additionally, he testified that the number of inmates searched varied from day to day, and that the selection of inmates to be searched was made randomly. It should be noted that Plaintiffs' counsel did not ask for a limiting instruction after Pierce or Blumenstock's answers.

The testimony give by Pierce and Blumenstock does not directly contradict paragraph five. In fact, there was general agreement in the witnesses' testimony that strip searches did occur during the period of August 27, 2002 through April 2003. The only apparent qualification was that the searches were less frequent as time went on, and the number of inmates searched varied from day to day. The stipulation simply states that strip searches occurred during a particular duration — not that searches occurred daily during that period, or that every inmate was searched every time. Consequently, the Court finds no direct contradiction between paragraph five and the witnesses' testimony.

With respect to paragraph six, Plaintiffs' counsel asked Blumenstock whether food was found on any of the inmates during the course of the strip searches. Blumenstock replied that he could not say for sure. Later, defense counsel called Blumenstock to testify, and on cross-examination Plaintiffs' counsel again referred him to paragraph six. After noting that searches were conducted in part because it was discovered that five to ten pounds of sugar had been stolen, Plaintiffs' counsel asked whether paragraph six was true. Blumenstock stated that "no one was ever found with ten pounds of sugar on their person," but that from time to time inmates were found with

stolen food on them. Again, Plaintiffs' counsel never asked for a limiting instruction when these answers were given.

Paragraph six is not clear as to which thefts it refers. That is, it could be construed to mean, "Persons responsible for ***the original food thefts that led to the decision to conduct strip searches*** were never discovered." It could also mean, "Persons responsible ***for any of the food thefts during this period*** were never discovered." It appears that Blumenstock believed he was responding to the first construction, and his answers did not contradict that construction. And while Plaintiffs' counsel may have intended the second construction in his questioning, the vagueness of the stipulation creates confusion. As the stipulation is unclear, and counsel failed to make clear which meaning he attached to the stipulation during Blumenstock's testimony, it is impossible to find that Blumenstock's testimony was in conflict with paragraph six.

Finally, even if Pierce and Blumenstock's answers contradicted the stipulated facts, the Court's instruction with respect to the stipulation cured any possible defect. On April 18, 2007, just prior to closing arguments, the Court read the stipulated facts to the jury and told them they could consider those facts as though they had been proven. Consequently, the jury was properly instructed as to the stipulated facts and the Plaintiffs suffered no prejudice as a result of Blumenstock and Pierce's testimony.

### C. Conclusion

For all these reasons, the Court **DENIES** Plaintiffs' motion for new trial (Doc. 198).

**IT IS SO ORDERED.**

**DATED this 11th day of February 2008.**

                                              **s/ Michael J. Reagan**
                                              **MICHAEL J. REAGAN**
                                              **United States District Judge**